UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| URETEK USA, INC. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> APPLIED POLYMERICS, INC., <br><br> Defendant. | Action No. 3:11-CV-542 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's Motion to Transfer Venue (ECF No. 16) to the United States District Court for the Middle District of North Carolina, Winston-Salem Division, pursuant to 28 U.S.C. § 1404(a), and Plaintiffs' Motion to Dismiss Defendant's Antitrust Counterclaim ("Motion to Dismiss") (ECF No. 24), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court DENIES Defendant's Motion to Transfer Venue and GRANTS Plaintiffs' Motion to Dismiss WITHOUT PREJUDICE.

I. **BACKGROUND**

This is a patent infringement action filed by Uretek USA, Inc. ("Uretek") and Benefil Worldwide Oy ("Benefil") (Uretek and Benefil, collectively, "Plaintiffs") against Applied Polymerics, Inc. ("Applied" or "Defendant"). In their Complaint, Plaintiffs seek to *inter alia* enjoin Defendant's alleged infringement of U.S. Patent No. 6,634,831 (the "'831 Patent"), recover a reasonable royalty as well as punitive damages for willful infringement, and attorneys' fees and costs. (Pls.' Compl. ¶¶ 7-8, 19.)

The '831 Patent, entitled "Method for Increasing the Bearing Capacity of Foundation Soils for Built Structures," discloses a slab jacking method of "injecting expandable polyurethane material deep into the foundation soil while monitoring at the surface to stabilize the foundation soil." (Pls.' Opp'n Def.'s Mot. Transfer Venue ("Pls.' Opp'n Transfer Mot.") 2, ECF No. 20.) This method is also known as the "Deep Injection Method."

Plaintiff Benefil owns the '831 Patent. (Pls.' Compl. ¶¶ 7-8.) Plaintiff Benefil is based in Finland and does not operate in the United States. (Pls.' Opp'n Transfer Mot. 2.) Plaintiff Uretek is an Iowa corporation with its principal place of business in Texas. Plaintiff Uretek is the exclusive licensee of the '831 Patent in the United States and uses the patented method to "resolve complex pavement lifting and soil stabilization issues for Departments of Transportation and various government entities nationwide." (Pls.' Opp'n Transfer Mot. 2.)

Defendant Applied, a North Carolina contractor, is usually hired to repair sinking or collapsed roadways caused by voids or gaps in the soil below. (Def.'s Mem. Supp. Mot. Transfer Venue ("Def.'s Transfer Mot.") 3, ECF No. 17.) Applied alleges that the slab jacking method it employs in performing these repairs involves the "injection of a polyurethane foam composition into the soil or void below the highway surface, thereby filling the void and leveling the structure above." (Def.'s Transfer Mot. 3.) Defendant alleges the method it uses is standard in the industry. (Def.'s Transfer Mot. 3.)

In 2010, the Commonwealth of Virginia's Department of Transportation ("VDOT") awarded to Branscome, Inc. ("Branscome"), a general contractor, a contract to repair and maintain several portions of I-664 (the "I-664 Project"). Branscome entered into a subcontract with Defendant Applied to stabilize and lift pavement on I-664 (Pls.' Compl.

2

¶12.) Plaintiffs allege that in performing on the I-664 Project, Applied infringed on several claims of the '831 Patent. (Pls.' Compl. ¶13.)

On August 18, 2011, Plaintiffs filed this suit alleging patent infringement against Applied.[1] On September 29, 2011, Defendant Applied filed a Motion to Transfer Venue for this action to the Middle District of North Carolina, Winston-Salem Division ("Middle District of North Carolina").

Also on September 29, 2011, Defendant filed its Answer and Counterclaim. (ECF No. 19.) In the three-count counterclaim, Defendant alleges that Plaintiffs engaged in: (1) false representation in violation of the Lanham Act, 15 U.S.C. § 1125; (2) monopolization and attempted monopolization in violation of the Sherman Act, 15 U.S.C. § 2; and (3) unfair and deceptive trade practices in violation of the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*. (Def.'s Answer & Countercl. 7.) On October 24, 2011, Plaintiffs filed a Motion to Dismiss Count Two of Defendant's Antitrust Counterclaim.

## II. DEFENDANT'S MOTION TO TRANSFER VENUE

In its Motion to Transfer Venue, Applied argues that this action bears a tenuous relationship to Virginia and the Middle District of North Carolina is the preferred venue for this action for multiple reasons. First, Applied argues that this action could initially have been brought in the Middle District of North Carolina because Applied is incorporated, maintains its principal place of business, and resides in North Carolina. Second, Applied contends that this District, Plaintiffs' choice of forum, is not entitled to deference because it is not Plaintiffs' home forum, and North Carolina, the "center of the accused activity," is the

---

[1] This action is not the first between these two parties over the '831 Patent. In 2005, Applied filed an action in the United States District Court for the Middle District of North Carolina against Uretek for improper anti-competitive conduct by Uretek in relation to the '831 Patent. In June 2007, while the litigation was pending, the parties settled. (Pls.' Opp'n Transfer Mot. 6.)

preferred forum for this patent infringement action. Third, Applied claims that the convenience of the parties and the substantive witnesses that reside in North Carolina strongly favors the transfer. Finally, Applied argues that the "interest of justice" factor weighs in favor of transfer.

In opposition, Plaintiffs argue their forum choice of the Eastern District of Virginia should not be disturbed because this District is the forum: (1) where Defendant performed the infringing activity; and (2) where important non-party witnesses reside. Further, Plaintiffs argue that the interest of justice does not favor a transfer because this Court is better placed to hear this case expeditiously.

1. Legal Standard

Under 28 U.S.C. § 1404(a), a district court may transfer a case if: (1) the case could initially have been brought in the transferee court; and (2) if the convenience of the parties and witnesses, and the interest of justice favors such a transfer. 28 U.S.C. § 1404(a). If the case could initially have been brought in the transferee court, the district court has "great discretion" in deciding whether to grant a motion to transfer venue, *In re Verizon Bus. Network Servs.*, 635 F.3d 559, 561 (Fed. Cir. 2011); yet, the district court must weigh the plaintiff's forum choice; the convenience and access of the witnesses and parties; and the interest of justice. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007); *see One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004). The movant bears the burden of proving, in accordance with these factors, that a transfer is appropriate and necessary. *Hunter Engineering Co. v. ACCU Indus.*, 245 F. Supp. 2d 761, 774 (E.D. Va. 2002).

2. <u>Discussion</u>

The convenience and access of the witnesses is often the dispositive factor in the venue transfer analysis, *Board of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988), and in this case it is. The Court should give "greater weight [to the] inconvenience [of] witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue." *Id.*

The critical dispute in this case is whether the '831 Patent was used in the I-664 Project.[2] In fact, the crux of the issue is whether in performing on the I-664 Project, Applied dug so deep into the ground so as to infringe Plaintiffs' patent. Thus, the crucial witnesses are those who either performed the work or oversaw the work performed on the I-664 Project. These witnesses fall into two categories: party witnesses and non-party witnesses. The witnesses Applied posits are party witnesses—employees of Applied who directed, supervised, and performed the work on the I-664 Project. Applied's witnesses, with the exception of one, all reside and work in North Carolina. On the other hand, Plaintiffs identified crucial non-party witnesses—employees of Branscome and the VDOT who contracted, subcontracted, and oversaw the work performed by Applied on the I-664 Project—are located in Virginia.

The Court gives more weight to the inconvenience to the identified non-party witnesses in going to North Carolina. These non-party witnesses, although not present every minute of the day, are independent, unbiased third-party witnesses who witnessed

---

[2] The Court notes Defendant's argument that the Complaint suggests Defendant infringed the '831 Patent in projects other than the I-664 Project. In fact, Plaintiffs state in their opposition to Defendant's Motion to Transfer that "[d]iscovery may reveal Applied also infringed on at least some of the other jobs." (Pls.' Opp'n Transfer Mot. 7 n.1.) Defendant states that it has performed at least sixteen of these sorts of projects, nine of which were in North Carolina. (Def.'s Transfer Mot. 13.) However, the only information presently before this Court is the alleged infringement of the '831 Patent during the performance of the I-664 Project in Virginia; hence, the Court's decision is limited to these facts.

the work performed by Applied on the I-664 Project. They are located in Virginia and are not subject to the subpoena power of the Middle District of North Carolina because they are more than one hundred miles from the Middle District of North Carolina. *See* Fed. R. Civ. P. 45. The witnesses identified by Applied, however, are party witnesses who can be persuaded by their employer to attend a different forum; consequently, the inconvenience to these witnesses is entitled to less weight in the transfer analysis.

The burden is on Defendant to demonstrate venue is appropriate and necessary in another venue other than the one chosen by Plaintiffs. Defendant has failed to overcome this burden. Thus, the Court DENIES Defendant's Motion to Transfer Venue.

### III.  PLAINTIFFS' MOTION TO DISMISS

In Count Two of Defendant's Counterclaim, Defendant alleges that Plaintiffs engaged in monopolization and attempted monopolization in violation of Section 2 of Sherman Act. (Def.'s Answer & Countercl. 9.) Plaintiffs move to dismiss Count Two of Defendant's Counterclaim for failure of Applied to allege monopoly power in the relevant market. Plaintiffs further argue that the attempted monopolization claim should be dismissed because Applied: (1) did not allege facts showing the relevant market, and (2) did not allege facts demonstrating a dangerous probability of success by Plaintiffs. Further, Plaintiffs argue that the *Noerr-Pennington* Doctrine bars Applied's Counterclaim and protects Plaintiffs' ability to access the courts to vindicate their patent rights.

1. <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the factual allegations of the pleadings. *See* Fed. R. Civ. P. 12(b)(6). Rule 8 of the Federal Rules requires a "short and plain statement of the claim

showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007); neither does it need to be supported by evidence, *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Yet, it must "state a claim to relief that is plausible on its face." *Id.* at 193 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). A plausible claim contains more than just unadorned accusations, mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S. Ct. 1937, 1949.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. While "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion of entitlement to relief," *Twombly*, 550 U.S. at 556 n.3, a plaintiff or counterclaimant is not required to show that he is likely to obtain relief, *Iqbal*, 129 S. Ct. at 1949. If the complaint alleges—directly or indirectly—each of the elements of "some viable legal theory," the plaintiff or counterclaimant should be given the opportunity to prove that claim. *Twombly*, 550 U.S. at 563 n.8.

In resolving a 12(b)(6) motion, a court must regard as true all of a plaintiff's or counterclaimant's well-pleaded allegations, *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), as well as any facts that could be proven consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In contrast, the court does not have to accept legal conclusions couched as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Iqbal*, 129 S. Ct. at 1950.

With these principles in mind, a court must ultimately ascertain whether the plaintiff or counterclaimant has stated a plausible, not merely speculative, claim for relief.

2. <u>Discussion</u>

To succeed on a claim of monopolization in violation of Section 2 of the Sherman Act, a claimant must prove "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 710 (4th Cir. 1991) (citations omitted). A claim of attempted monopolization requires proof of three elements: "(1) a specific intent to monopolize the relevant market; (2) predatory or anticompetitive acts in furtherance of the intent; and (3) a dangerous probability of success." *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 166 (4th Cir. 1992).

It is well established that the possession of a patent by itself "does not necessarily confer market power upon the patentee." *Ill. Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45 (2006); *see C. R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1368 (Fed. Cir. 1998). "The commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibited monopolist. The patent right must be coupled with violations of § 2, and the elements of violation of § 2 must be met." *Abbott Lab. v. Brennan*, 952 F.2d 1346, 1354 (Fed. Cir. 1991) (citations and internal quotation marks omitted).

The Court finds that Defendant has failed to adequately plead an antitrust case. First, although Plaintiff Uretek is the exclusive licensee of the '831 Patent in the United States, this does not necessarily translate into monopoly power. Further, Defendant

8

focused its assertions of monopoly power by referencing the effects on the market as a result of anticompetitive conduct of Plaintiffs. The effect of anticompetitive conduct is not evidence of monopoly power. In addition, Defendant's assertion that "the relevant product market is the pavement lifting and roadway repair and maintenance industries, and the relevant geographic market is the United States"[3] (Def.'s Answer & Countercl. 10), is too broad and is unsupported by factual allegations.

Antitrust claims require particular and specific facts which Defendant has failed to plead. Because Defendant has not pled facts sufficient to survive a 12(b)(6) motion the Court GRANTS Plaintiffs' Motion to Dismiss Defendant's Antitrust Counterclaim WITHOUT PREJUDICE.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Transfer Venue and GRANTS Plaintiffs' Motion to Dismiss Defendant's Antitrust Counterclaim WITHOUT PREJUDICE.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

                                                              /s/
                                    James R. Spencer
                                    Chief United States District Judge

ENTERED this   5th   day of December 2011.

---

[3] At the Hearing, Defendant conceded that the relevant product market may instead be "the pavement lifting *in* roadway repair and maintenance industries."